UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**WILLIE BRADFORD**  **CIVIL ACTION NO. 3:12-cv-0544**
    **Franklin Parish D.C.  #111129**
**VS.**  **SECTION P**

    **JUDGE DONALD E. WALTER**

**WARDEN CHAD LEE**  **MAGISTRATE JUDGE KAREN L. HAYES**

REPORT AND RECOMMENDATION

*Pro se* plaintiff Willie Bradford, proceeding *in forma pauperis,* filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 27, 2012.  Plaintiff is a prisoner at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana, and he complains about various conditions of confinement that he is exposed to in administrative segregation at that prison.  He sued the FPDC and its wardens, Lee, Emfinger, and Griffen, and prayed for "relief" and "compensatory damages under a tort claim."  In an amended complaint he joined Allen Mulkey, Chad McMurruah, Joshua Dunn, Charles Johnson, Mrs. Dana and Mrs. Susan as defendants.    This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

From February 27, 2012, through May 11, 2012, plaintiff has submitted four complaints concerning the conditions at FPDC.

*1. Original Complaint [Doc. 1]*

His first complaint [Doc. 1] named only the FPDC as a defendant. Plaintiff complained that he requested hair cuts, recreation and religious services; he implied that his requests were denied. He also alleged that he filed a grievance seeking mental health medical treatment. He claimed that his medication has him confused and he has "no legal assistance to law library." He requested no specific relief. He attached a copy of what purports to be his grievance to Warden Lee which complained that he received no assistance from inmate counsel; that he is not being provided mental health counseling as required by prison segregation guidelines for prisoners held in segregation due to protective custody or disciplinary detention for more than 30 days. According to the grievance such assessments must be conducted every 3 months. He also complained that he was permitted outdoor recreation on only two occasions in one year. He concluded by claiming that his sick call requests have been ignored.

*2. Amended Complaint [Doc. 4]*

His second complaint [Doc. 4] likewise identified FPDC as his sole defendant. He complained that despite his grievance to Warden Lee, he is still denied assistance from inmate counsel; that General Segregation Guidelines concerning mental health services for prisoners confined in segregation are being violated; that he has been permitted outdoor recreation on only two occasions during the past year; and, that his sick calls have been ignored. He prayed for "relief."

*3. Second Amended Complaint [Doc. 7]*

His third complaint [Doc. 7] filed on April 4, 2012, identified Wardens Lee, Emfinger,

and Griffen as defendants and again complained of the denial of inmate counsel; the violation of mental health guidelines for prisoners in segregation; the lack of outdoor recreation opportunities; and the denial of sick call. He concluded by praying for relief and "compensatory damages under a tort claim" in accordance with a Louisiana statue.

*4. Amend Order and Third Amended Complaint [Docs. 9 and 10]*

On April 26, 2012, plaintiff was directed to amend his complaint to, among other things, state whether he is a pretrial detainee or a convict; to state what each defendant did to violate his rights; and, to specify the prejudice, injury or damage sustained as a result of each alleged violation. [Doc. 9[1]]

On May 11, 2012, plaintiff filed a three-page handwritten response. With regard to the inquiry concerning his status, plaintiff provided a cryptic response, "Yes, I'm confine again and also detained as prisoner at [FPDC] having not receive time yet for charges." [Doc. 10] With regard to the demand that he state what each defendant did to violate his rights, he replied, "These are the names of each person who allegedly violated plaintiff's ... Constitutional rights: Allen Mulkey 2/13/11, Chad McMurruah, 2/1/11, Joshua Dunn, 2/11/11. These personal was the

---

[1] He was instructed as follows, "Rule 8 of the Federal Rules of Civil Procedure does not require explicit detail, but it does require a plaintiff to allege some facts which support the conclusion that his constitutional rights were violated by the defendant. In other words, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). At the very least, plaintiff should provide– (1) the name of <u>each person</u> who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or <u>what each defendant did to violate plaintiff's rights</u>; (3) <u>the place and date that each event occurred</u>; and (4) a description of the <u>alleged injury</u> sustained as a result of the alleged violation." [Doc. 9]

ones who inflicted such denied or liberally of mental health counseling or outdoor recreation or the sick calls that was sent in by being ignored.  I asked Allen Mulkey, Chad McMurruah, Joshua Dunn, and Charles Johnson all of these that are or was working at the Detention Center at the time for outside recreation, haircuts, telephone calls and sick calls and was denied. Others were Dana and assisted her was Susan whom I don't know the last names of." [Doc. 10, p. 1] He also claimed that he was told by Dana and Susan that he would see a "mental health doctor"; however, he was not examined by such a physician "until appointed time by courts."

He claimed that Charles Johnson denied him church services on December 13, 2011; and, on other dates denied him recreation or sick call. He complains that he is unable to remember the dates of each violation because of the medication he is taking and because the defendants control the air conditioning in his cell.

He claimed that Joshua Dunn attempted to "provoke" plaintiff by placing a key to plaintiff's chest and telling him "don't be asking about store because the trustees worked for him and I'll get it when I get it." He also claimed that Dunn placed an inmate with a knife in plaintiff's cell to do him bodily harm; however, he did not thereafter claim that he was attacked or sustained injury as a result of this action.

He concluded by claiming "Charles Johnson is the officer that denied me church services and from then on I wouldn't pursue going to church..."

### Law and Analysis

*1. Screening*

When a prisoner – a convict or detainee –  is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the

court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C. §1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge*

*No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint and two amended complaints outlining the broad contours of his claims; he was instructed to amend his complaint to provide more specific facts concerning the violation of his rights by each defendant with respect to each claim. He was specifically directed to describe the prejudice, harm, or injury sustained as a result of the alleged violations. He submitted an additional amended complaint; however, as was shown above, the amended complaint was also deficient and alleged only conclusory claims against additional defendants.

*2. Medical Care – Deliberate Indifference*

Plaintiff was specifically directed to state whether he is a convict or detainee. His response, as noted above is somewhat cryptic. For the purposes of this report, it will be assumed that he is a detainee. As a detainee, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Detainees, by virtue of their status, are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). Nonetheless, when, as here, a pretrial detainee brings claims which are directed toward particular incidents, such as the denial of prompt and appropriate medical care, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633,

644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.* To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm*. Id.*

Thus, in order to establish an actionable constitutional violation plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings. As noted above, plaintiff, in his original complaint [Doc. 1], alleged only that he was denied mental health treatment. In his Amended Complaint [Doc. 2] he reiterated that claim and alleged that his sick calls were ignored. He reiterated those claims in his Second Amended Complaint [Doc. 7] Finally, in response to the order directing him to provide more specific facts to support his claim, he alleged again only that he was denied sick calls and access to a mental health professional "until appointed time by courts."

Clearly, plaintiff has provided only conclusory allegations to support his medical care claims.

To the extent that the pleadings allege negligence or even malpractice on the part of the defendants with regard to his medical care claim, plaintiff fails to state a claim for which relief may be granted since deliberate indifference is not equivalent to negligence. Put simply, deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

Plaintiff was afforded the opportunity to amend his complaint to allege facts tending to establish deliberate indifference; however, as noted above, his amended complaint added no additional factual support for his claim. Taken as true for the purposes of this report, plaintiff has alleged only that on unspecified occasions, he was denied "sick calls" and the opportunity to see a mental health professional; however, plaintiff did not provide sufficient facts to establish that the named defendants were indifferent to his plight.

Finally, plaintiff was instructed to specify the harm sustained as a result of the defendants' deliberate indifference. However, as shown above, he provided no factual allegations to establish that any harm resulted from the actions or inactions of the named

defendants.

### *3. Access to Courts*

Plaintiff also complained that he was denied "legal assistance" and thus implied that his right of access to the courts was denied. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

The pleadings and exhibits demonstrate that plaintiff has encountered no problems with transmitting documents to or receiving documents from this court or any other.

Further, even if plaintiff could establish deficiencies in the manner in which access to court is provided by the defendants, in order for him to state a claim that he was denied his constitutional right of access to the courts, he must also "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328

(5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading. This he has failed to do.

Since he has failed to demonstrate injury or prejudice, his access to courts claim must be dismissed for failing to state a claim for which relief may be granted.

### *4. Practice of Religion*

Plaintiff has generally claimed that he was denied "church services."

#### *a. First Amendment*

Prisoners retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison

inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff has not demonstrated that he is totally prohibited from practicing his chosen religion by just because he was denied access to church services on one or more occasions by a prison guard.

### b. RLUIPA

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he also alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are

unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a "substantial burden" on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A). Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

As noted in the discussion above, plaintiff has not now or ever alleged that the defendants have done anything to pressure him to modify his religious behavior or violate his beliefs or the tenets of Christianity. Plaintiff has likewise failed to state a claim for which relief may be granted under the RLUIPA.

### 5. *Miscellaneous Claims – Haircut, Recreation, Threats, Confinement*

Finally, plaintiff complained that he was denied haircuts and outdoor recreation on various unspecified occasions. He claimed that one of the defendants attempted to "provoke"

plaintiff by placing a key to his chest and denying him access to the prison store. He also claimed that an armed inmate was assigned to plaintiff's cell, and in general, he complained about his placement in lock down or administrative segregation.

Prisoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Constitution. *See Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999)(unpublished), citing, *Jones v. Diamond*, 594 F.2d 997, 1012-13 (5th Cir.1979); *see also Scott v. Gusman*, Civil Action No. 10-2706 (E.D.La., February 14, 2011)*,* 2011 WL 666851 (Even if a prisoner is allowed outside for only 45 minutes, twice a week, that "... is not an atypical, significant deprivation in a prison setting, and it does not rise to the level of a constitutional violation. *See Argue v. Hofmeyer*, 80 Fed. App'x 427, 429 (6th Cir.2003); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir.2003); *Figueroa v. Dinitto*, 52 Fed. App'x 522, 523 (1 st Cir.2002); *Smith v. Romer*, No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997); *Smith v. Beatty*, No. 95-1493, 1996 WL 166270, at *1 (7th Cir. Apr. 5, 1996). Even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. *See, e.g., Chavis v. Fairman*, No. 92-C-7490, 1994 WL 55719, at *5 (N.D.Ill. Feb. 22, 1994) ('Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity.'), aff'd, 51 F.3d 275 (7th Cir.1995); *Rue v. Gusman*, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D.La. May 11, 2010); *Broussard v. Phelps*, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D.La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of

the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise)." Plaintiff's complaint concerning recreation fails to state a claim for which relief may be granted.

As to his complaint concerning haircuts, plaintiff can point to no provision in the Constitution or laws of the United States that guarantees prisoners the right to periodic haircuts.

He also claimed that he was threatened by a guard; however, verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983).

He claimed that he was housed with an armed inmate. However, plaintiff did not allege that he was assaulted or in any way victimized by this inmate.

Finally, plaintiff implied that his confinement in lock-down violated his right to due process. However, that allegation fails to state a claim for which relief may be granted. "Prison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir.1990); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir.2003). In the context of administrative lock-down, the Courts have clearly held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *E.g., Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir.1996) (affirming dismissal of claim that lock-down for suspected gang affiliation violated due process); see also *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L. Ed.2d 174 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

Finally, with regard to each of his claims, plaintiff was specifically directed to describe the injury or harm he sustained as a result of the alleged constitutional violations. Plaintiff submitted an original complaint and three amended complaints. However, he alleged no injury, physical or otherwise resulting from the complained of conditions and circumstances. Title 42 U.S.C.§1997e(e), provides "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The term "prisoner" as used in the statute includes detainees, such as plaintiff, who have been accused but not yet convicted of crime. See §1997e(h). Further, the " 'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.' " *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).

Plaintiff clearly has failed to allege injury or harm and therefore he has failed to state a claim for which relief may be granted.

### *Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers at Monroe, Louisiana,

June 20, 2012.

```
                                          KAREN L. HAYES
                                          U. S. MAGISTRATE JUDGE
```